UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **VANESSA ST. PIERRE,** | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **EP-19-CV-00223-DCG** |
| | § | |
| **DEARBORN NATIONAL LIFE** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendant Dearborn National Life Insurance Company's ("Defendant") "Motion to Dismiss" (ECF No. 10) ("Motion") filed on February 19, 2020. Therein, Defendant requests the Court to dismiss Plaintiff Vanessa St. Pierre's ("Plaintiff") Amended Complaint (ECF No. 9) [hereinafter "Complaint"] because it argues that Plaintiff has failed to state a claim for which relief can be granted. For the reasons that follow, the Court **GRANTS** Defendant's Motion.

## I.   BACKGROUND

### A.   Factual Background.

The following facts derive from Plaintiff's Complaint and, in this posture, are taken as true. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012).

On August 11, 2014, Plaintiff became an employee for the City of El Paso (the "City") as a dietician for its Health Department. Am. Compl. ¶ 5, ECF No. 9. On the second day of her in-processing as an employee, she received an Employee Benefits Summary that contained the following information about supplemental life insurance coverage offered by The Standard—the City's insurance provider at that time and Defendant's predecessor:

**Supplemental Life**. Approvals up to $200,000 are guaranteed for new employees. After 30 days of continuous employment, changes can only be made with a qualifying life event or through Open Enrollment and subject to medical underwriting. Evidence of Insurability application for underwriting process will be required with waiting period of approximately six (6) weeks for an answer from carrier. Plan is age-graded term life policy.

*Id.*; Ex. 1. Wishing to enroll, Plaintiff filled out a 2014 Personal Enrollment Form for supplemental life coverage after tax for her husband in the amount of $200,000, and for dependent life coverage for her husband in the amount of $100,000. Am. Compl. ¶ 6; Ex. 2 at 3. Printed next to the blank spaces for the coverage amounts that Plaintiff filled out reads "Pending E of I _____" (blank space in original), meaning "Pending Evidence of Insurability". *Id.* At the beginning of that section, the following paragraph is printed in bold capital letters:

**TO ENROLL IN OR MAKE CHANGES TO THE FOLLOWING PLANS (SUPPLEMENTAL LIFE, DEPENDENT LIFE AND SHORT TERM DISABILITY) YOU MUST MEET WITH A REPRESENTATIVE. THEY WILL BE AVAILABLE DURING THE ENROLLMENT SESSIONS. AN EMPLOYEE CANNOT INSURE HIS/HER SPOUSE IF THE SPOUSE IS AN EMPLOYEE OF THE CITY OF EL PASO AND ONLY ONE PARENT CAN INSURE THE CHILD/CHILDREN.**

*Id.*; Ex. 2 at 3. At the end of the 2014 Personal Enrollment Form, just above the signature line that Plaintiff signed on August 12, 2014, the following paragraph is printed in bold capital letters:

**I UNDERSTAND THAT IT IS MY RESPONSIBILITY TO VERIFY THAT ALL PAYROLL DEDUCTIONS AS STATED ABOVE ARE CORRECT AND TO REPORT ANY DISCREPANCIES IN DEDUCTIONS ON MY PAYCHECK TO THE INSURANCE AND BENEFITS DIVISION IMMEDIATELY TO GUARANTEE PROPER COVERAGE AND CONTRIBUTIONS. I ALSO UNDERSTAND THAT IF I WAIVE OR DO NOT SELECT ANY OF THE MEDICAL PLANS, I WILL NOT HAVE COVERAGE IN THOSE PLANS.**

*Id.*; Ex. 2 at 6.

After becoming eligible for the benefits in October 2014, the City began deducting $9.90 from her bi-weekly pay for an item titled "Optional Life After Tax Ded[uction]"[1]. *Id.* ¶ 7. Plaintiff assumed the City had correctly determined the deduction amounts for both coverages and combined them into one deduction. *Id.* From 2015 through 2017, Plaintiff completed her annual enrollment online for insurance coverage pursuant to City policy, each year indicating no change in her life insurance coverage. *Id.*

On July 26, 2017, the City published a request for proposals for employee benefit plans and required the proposals to "identify and explain [its] online eligibility and enrollment capabilities." *Id.* ¶ 8; Ex. 4. On July 31, 2017, Defendant submitted its proposal to the City, in which it identified T.E.B. Benefits Group as its agent and committed to providing an Account Service team that would, *inter alia*, "make the transition to [Defendant] smooth and effective with minimal interruption to [City] employees," "[c]reat[e] and review draft contracts and certificates," "facilitat[e] . . . client service training," and "review . . . annual benefits and experience with [City] benefits staff." *Id.* ¶ 9; Ex. 5 at 5–6. On November 1, 2017, Defendant submitted a "final offer" to the City that offered its employees the following as "Life Insurance Option B":

> A one-time modified open enrollment with life insurance amounts of $50,000 for employees and $20,000 for spouses up to Guarantee Issue Limit. Anyone wishing coverage over the Guarantee Issue Limit would still need to submit evidence of insurability. In the event someone does not wish to change their elected amounts, the current amounts will be grandfathered.

*Id.* ¶ 10; Ex. 6. On November 28, 2007, the City accepted Defendant's offer and Defendant became the City's insurance provider. *Id.* ¶ 11; Ex. 7.

---

[1] Plaintiff attached as Exhibit 3 a payroll stub from August 19 to September 1, 2018, that shows that the City deducted $9.90 for that item. *Id.*, Ex. 3.

On December 13, 2017, Plaintiff attended the City's 2018 Open Enrollment Session to enroll in Defendant's employee benefit plan. *Id.* ¶ 13; Ex. 8. During the open enrollment session, Plaintiff filled out an Enrollment Form 2018 in her own handwriting, except for the rates for employee and spouse/dependent life insurance in "Part E. Supplemental / Basic Life Insurance," because she told the City's Human Resources representative that she did not know the rates to include in the form, but that she wanted to keep the same coverages she previously had. *Id.* ¶ 13; Ex. 9. The City's Human Resources representative then wrote "same" in the form's spaces for both insurance coverages, and then checked the box in that section for "Employee + Dependent(s)." *Id.* Printed at the end of the Enrollment Form 2018, just above the signature line that Plaintiff signed on December 13, 2018, is the following paragraph:

> I hereby authorize deductions from my salary of the amount required, if any, for the insurance indicated. I understand that it is my responsibility to verify that all payroll deductions are correct and to report any discrepancies in deductions on my paycheck to the HR Benefits Services immediately to guarantee proper coverage and contributions.

*Id.*

On August 31, 2018, Plaintiff's husband passed away. *Id.* ¶ 18. On September 11, 2018, when she called the City's Human Resources Benefits Department to claim her late husband's insurance benefits, Plaintiff was informed that she did not have dependent coverage on her husband's life. *Id.* On October 2, 2018, Plaintiff met with Ms. Mary Michel, the City's Human Resources Assistant Director, Ms. Zulema Perez, another of the City's Human Resources representatives, and Ms. Brenda Kinderman, one of Defendant's representatives. *Id.* ¶ 19. At the meeting, Plaintiff and the others disagreed about whether Plaintiff had ever received a form to fill out and provide Evidence of Insurability. *Id.* According to Plaintiff, Ms. Michel did ultimately admit the City's mistake in failing to deduct the premiums from her bi-weekly pay

and offered to settle the claim for $20,000, but Plaintiff declined.  *Id.*  Plaintiff then retained

counsel to continue pursuing her claim.  *Id.*

On November 20, 2018, at Defendant's insistence, Plaintiff submitted her claim directly

to Defendant for her late husband's insurance benefits.  *Id.* ¶ 20.  On December 12, 2018,

Defendant sent Plaintiff a $2,000 check, the minimum amount of dependent life insurance for

employees who make no election for higher coverage.  *Id.*; Ex. 18.  On February 15, 2019,

Plaintiff's counsel requested notice of the amount of premiums that the City had mistakenly

failed to deduct from her pay so that she could render the amount by check to the City.  *Id.* ¶ 21,

Ex. 19.  Neither the City nor Defendant responded to that request, after which, the City requested

Defendant to indemnify and defend it pursuant to their agreement.  *Id.* ¶ 21; Ex. 20.  Then, on

April 1, 2019, the City informed Plaintiff, through counsel, that it had tendered her dependent

life insurance claim to Defendant for handling.  *Id.* ¶ 22.

On May 16, 2019, Defendant sent Plaintiff a letter informing her that her claim was

rejected because her husband was not eligible for coverage.  *Id.* ¶ 23; Ex. 22.  Specifically,

Defendant stated that, on the enrollment form dated August 12, 2014, Plaintiff had sought to

enroll her husband as a dependent spouse for $100,000 in life insurance coverage, but that in

order to obtain coverage in that amount,  Plaintiff needed to submit a completed Evidence of

Insurability form and have the coverage approved.  *Id.*, Ex. 22 at 3.  Since the completed form

was never received, the coverage was never approved, and the City could not withdraw premium

payments from her paycheck.  *Id.*  Further, Defendant informed Plaintiff that it had electronic

data that she had logged in to the online employee benefit system on November 17, 2016 to

review her benefits and that she did no changes.  *Id.*  Since Plaintiff did no changes then or

during the open enrollment session on December 13, 2017, the coverage was never approved.

*Id.*

**B.  Procedural Background.**

On June 24, 2019, Plaintiff filed her original complaint against the City and Defendant in the 243rd District Court of El Paso County, Texas, alleging a breach of contract claim against the City after her claim for insurance benefits was denied.  Notice of Removal at 1, 11, ECF No. 1. Plaintiff originally alleged that the City breached the contract that was formed after she accepted the City's offer to purchase life insurance for her husband when she became its employee on August 2014.  *Id.* at 11.  On August 14, 2019, the City and Defendant timely removed to federal court claiming complete diversity under 28 U.S.C. § 1332 because the City was improperly joined as a defendant as it was not the insurer.  *Id.* at 1–4.

On September 12, 2019, Plaintiff filed a motion to remand to state court that refuted Defendant's claim that the City was improperly joined.  Mot. to Remand, ECF No. 3.  But a week later, Plaintiff withdrew her motion to remand because she concluded that "the City was not . . . the putative insurer" after she had reviewed discovery that Defendant informally produced at Plaintiff's request.  Notice Withdrawing Mot. to Remand at 1–3, ECF No. 4.  After conducting their Rule 29(f) conference on August 19, September 4 and 19, and October 7, 2019, the parties agreed that Plaintiff had to amend her complaint to comply with the federal rules and to eliminate the City as a defendant.  Joint Report of Rule 26(f) Conference at 1–4, ECF No. 5.

On February 5, 2020, Plaintiff filed her "Amended Complaint" only against Defendant. Am. Compl., ECF No. 9.  Therein, Plaintiff alleges that Defendant violated the Texas Insurance Code and the Deceptive Trade Practices Act ("DTPA") based on Defendant's alleged misrepresentations to the City about the group insurance contract they formed.  *Id.* at 11.

Plaintiff claims that she has standing—or, better stated, the substantive right to sue—because she is a third-party beneficiary to that contract and suffered damages in the amount of $100,000.  *Id.* at 10.  Plaintiff also alleges that Defendant is estopped from denying her insurance coverage because Defendant and The Standard "implicitly promised the City that neither of them would engage" in any of the Texas Insurance Code and DTPA violations that Defendant committed, and that she relied on these implied promises.  *Id.* at 11–12.  On February 19, 2020, Defendant filed the instant Motion.  ECF No. 10.

## II.   STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet the "facial plausibility" standard, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court's task, then, is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."  *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc).  "Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

On a Rule 12(b)(6) motion, the court "must accept all well-pleaded facts as true, draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party."  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes and citations omitted). "*Iqbal* does not allow us to question the credibility of the facts pleaded . . . . *Iqbal*, instead, tells us to assume the veracity of well-pleaded factual allegations." *Ramirez v. Escajeda*, 921 F.3d 497, 501 (5th Cir. 2019) (alteration, internal quotes, and citations omitted).

Finally, in deciding the motion, "a district court may not go outside the complaint." *Gines v. D.R. Horton, Inc*., 699 F.3d 812, 820 (5th Cir. 2012) (internal quotes and citations omitted). The court may, however, "rely on documents incorporated into the complaint by reference[] and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal quotes and citations omitted).

## III.   DISCUSSION

As a threshold matter, the Court will address whether, as Plaintiff asserts, the City acted as Defendant's "agent" under Texas Insurance Code § 4001.003(1). Am. Compl. at 10.

Texas Insurance Code § 4001.003(1) defines "agent" as

> a person who is an authorized agent of an insurer or health maintenance organization, a subagent, and any other person who performs the acts of an agent, whether through an oral, written, electronic, or other form of communication, by soliciting, negotiating, procuring, or collecting a premium on an insurance or annuity contract, or who represents or purports to represent a health maintenance organization, including a health maintenance organization offering only a single health care service plan, in soliciting, negotiating, procuring, or effectuating membership in the health maintenance organization.

Tex. Ins. Code. § 4001.003(1). However, the statute explicitly excludes from this definition

> an employer or an employer's officer or employee or a trustee of an employee benefit plan, to the extent that the employer, officer, employee, or trustee is engaged in the administration or operation of an employee benefits program involving the use of insurance or annuities issued by an insurer or memberships issued by a health maintenance organization, if the employer, officer, employee, or trustee is not directly or indirectly compensated by the insurer or health maintenance organization issuing the insurance or annuity contracts or memberships;

Tex. Ins. Code § 4001.003(1)(B).

Here, the City does not meet the statute's definition of "agent" because it is explicitly excepted from this definition.  First, the City, at all times during the instant litigation, has been Plaintiff's employer.  And second, the City has been "engaged in the administration or operation of an employee benefits program"—namely, Defendant's.  *Id.*  From Plaintiff's own exhibits, Exhibit 10, titled "Application for Group Insurance," shows that all of the people involved in the administration of Defendant's employee benefits program are City employees, not Defendant's. Am. Compl., Ex. 10 at 8.  Therefore, as a matter of law, any action by the City cannot be directly attributable to Defendant.  The Court now addresses the merits of Defendant's Motion.

By its motion, Defendant asks the Court to dismiss Plaintiff's claims against it for alleged DTPA and Texas Insurance Code violations and for promissory estoppel.  Mot. at 2.  Further, if the Court decides to dismiss Defendant's Complaint, Defendant asks the Court to deny Plaintiff leave to amend.  Reply to Resp. in Opp'n at 9–10, ECF No. 24.  The Court addresses Defendants' arguments in that order.

**A.  Texas Insurance Code Violations.**

Construing her Complaint liberally, Plaintiff appears to first allege that Defendant violated Texas Insurance Code § 541.051 for false and misleading representations to the City about the benefits and advantages of its policy to City employees.  Am. Compl. at 11.  Further, Plaintiff also alleges that Defendant violated Texas Insurance Code § 541.061(2) for "failing to state material facts necessary to make other statements made not misleading considering the circumstances under which the statements were made", and § 541.061(3) for "making a statement in a manner that would mislead a reasonably prudent person to false conclusions of material fact."  *Id.*  In response, Defendant argues that Plaintiff fails to allege plausible violations

of the Texas Insurance Code because none of her alleged facts are sufficient to support those purported allegations.  Mot. at 10.

After due consideration, the Court concludes that, although Plaintiff does have the substantive right to sue as an intended third-party beneficiary of the contract between Defendant and the City, her Texas Insurance Code claims nevertheless fail.

Texas Insurance Code § 541.151 provides the substantive right of action to

[a] person who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or practice:

> (1) defined by Subchapter B to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance; or

> (2) specifically enumerated in Section 17.46(b) [of the DTPA] as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment.

Tex. Ins. Code § 541.151; *see also* Tex. Ins. Code § 541.002 (defining "person" under the statute).  "Although the language of [§ 541.151] provides a cause of action to 'any person,' the right to sue under [§ 541.151] has been limited by Texas courts to persons in privity of contract with the insurer on an insurance policy or an intended beneficiary of an insurance policy."  *Tex. Med. Ass'n v. Aetna Life Ins. Co.*, 80 F.3d 153, 159 (5th Cir. 1996) (citing cases) (referring to former § 16(a)); *see also Knox v. Ball*, 191 S.W.2d 17, 23 (Tex. 1945) (holding that the third-party beneficiary need not be specifically named in the contract but must be otherwise sufficiently described or designated).  Hence, an intended beneficiary of an insurance policy can bring an action against another for (a) making, issuing, or circulating an estimate, illustration, circular, or statement misrepresenting a policy with respect to its terms, benefits, or the dividends to be received, Tex. Ins. Code § 541.051; (b) "failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements

were made", *id.* § 541.061(2); and (c) "making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact", *id.* § 541.061(3).  *Effinger v. Cambridge Integrated Services Group*, 478 F. App'x. 804, 807 (5th Cir. 2011).

 Here, as an intended beneficiary of the employee benefit plan that the City obtained from Defendant, Plaintiff can bring suit against Defendant for violations of the Texas Insurance Code. Indeed, if the City did not contract with Defendant with the intent to directly benefit its employees, such as Plaintiff,  then the contract "had no purpose whatever." *Cook Children's Health Care System v. Nocona Gen. Hosp.*, 02-17-00128-CV, 2018 WL 1630606, at *8 (Tex. App.—Fort Worth Apr. 5, 2018), *review denied* (Aug. 31, 2018) (citing *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900–01 (Tex. 2011)).

 Since she is pursuing these claims based on her intended beneficiary status of the employee benefit plan, then Plaintiff must plead factual allegations that Defendant committed a Texas Insurance Code violation in its dealings with the City that involved the employee benefit plan.  However, Plaintiff fails to adduce legally sufficient evidence of any violation under Texas Insurance Code §§ 541.051, 541.061(2), and 541.061(3) because she fails to identify what specific misrepresentations of the policy Defendant made, what material facts Defendant failed to state, and what statements were made in a manner that would mislead a reasonable prudent person to a false conclusion of material fact, respectively.  In fact, Plaintiff also does not even allege any facts that may support an inference that Defendant violated the Texas Insurance Code in its dealings with the City.

  Instead, most of Plaintiff's allegations appear to designate the City as the wrongdoer in this case, and not Defendant.  For instance, Plaintiff alleges that when she filled out the 2014 Personal Enrollment Form, the City never provided any other information about the Evidence of

Insurability requirement, which was the main reason for which The Standard—not Defendant—never approved life coverage for her husband.  Am. Compl. ¶ 5.  Plaintiff also alleges that the City's Notice of 2018 Open Enrollment, *id.*, Ex. 8, "[was] not written in plain, readable, understandable language" because it asked employees to review a life insurance rate sheet that was not provided and because it did not explain that "E of I" meant Evidence of Insurability.  *Id.* ¶ 12.[2]  Perhaps most importantly, Plaintiff alleges that the *City's* Human Resources Assistant Director, Ms. Michel, admitted the *City's* mistake in failing to deduct the premiums from her bi-weekly pay and offered to settle the claim for $20,000, which Plaintiff declined.  *Id.*  ¶ 19.  And lastly, Plaintiff also alleges that the *City* "has had a history of inserting at least two poison pills into its dependent life insurance coverage without giving its employees adequate tools to protect themselves and their families against unexpected forfeiture of their rights."  *Id.* ¶ 25.

But as discussed *supra*, since the City cannot act as Defendant's agent as a matter of law, no potential wrongdoing from the City can be attributed to Defendant.  Thus, even when presuming that these allegations against the City embrace those specific facts necessary to support her Texas Insurance Code claims, Plaintiff still fails to state a claim against Defendant for which relief can be granted.  Therefore, the Court dismisses Plaintiff's Texas Insurance Code claims without prejudice.

---

[2] This factual allegation is actually contradicted by Plaintiff's own Exhibit 8, which shows that the Notice of 2018 Open Enrollment for Defendant's employee benefit plan had the following paragraph:

> Employees may increase their supplemental life volume without *Evidence of Insurability (E of I)* up to $50,000, not to exceed a total of $200,000.  Spouses may increase their supplemental volume without E of I by up to $20,000, not to exceed a total of $20,000.  Any increased amount in excess of these limits is subject to E of I.  The E of I form will be available upon request.

Am. Compl., Ex. 8 at 9.

**B.  DTPA Violations.**

Plaintiff next alleges that Defendant violated § 17.46(b)(12) for "representing that an agreement confers rights, remedies, or obligations which it does not in fact involve," and § 17.46(b)(24) for "failing to disclose information about 'E of I' and calculation of pay deduction rates which were known at the time and with the intent to dissuade employees such as [Plaintiff] from taking measures necessary to protect her . . . rights."  Am. Compl. at 11.  In response, Defendant argues that Plaintiff fails to allege plausible violations of the DTPA because none of the alleged facts are legally sufficient to support her claims.  Mot. at 10.  Alternatively, Defendant argues that Plaintiff's DTPA claims fail because she has not alleged any reliance upon any alleged misrepresentations as required by the statute.  Mot. at 13.  The Court agrees with Defendant.

The DTPA authorizes consumer suits when false, misleading, or deceptive acts are the producing cause of "[actual damages] or damages for mental anguish."  *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012) (quoting Tex. Bus. & Com. Code § 17.50(a)(1)).  Under Texas law, purchasers of insurance policies are considered to be "consumers" within the meaning of the DTPA.  *Webb v. UnumProvident Corp.*, 507 F. Supp. 2d 668 (W.D. Tex. 2005).  Relevant to this case, acts that are actionable under the DTPA include: (a) "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law", Tex. Bus. & Com. Code § 17.46(b)(12) ; and (b) "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed," Tex. Bus. & Com. Code § 17.46(b)(24).  But to maintain a suit

against another under the DTPA, the consumer must also allege that she relied to her detriment on the false, misleading, or deceptive act. *Cruz*, 364 S.W.3d at 823.

Here, Plaintiff's DTPA claims fail for similar reasons that her Texas Insurance Code claims failed: she fails to adduce legally sufficient evidence that Defendant committed any DTPA violation or that would support an inference that Defendant committed the same. First, nowhere in her Complaint does Plaintiff allege that Defendant represented to the City or to her that the employee benefit plan conferred rights, remedies or obligations which it does not in fact involve, Tex. Bus. & Com. Code § 17.46(b)(12). Indeed, the opposite is true. Plaintiff's own allegations indicate that Defendant committed to "grandfather" all of the City's current life insurance amounts, Am. Compl. ¶ 10, but since Plaintiff's account was never approved by The Standard—not Defendant—for lack of Evidence of Insurability, Defendant, consistent with its commitment to the City, had no life insurance account belonging to Plaintiff to "grandfather." *Id.*, Ex. 22 at 3.

Second, even when drawing all inferences in favor of Plaintiff, her allegation that Defendant failed "to disclose information about 'E of I' and calculation of pay deduction rates which were known at the time and with intent to dissuade employees such as [Plaintiff] from taking measures necessary to protect . . . their rights," fails to establish a violation under Tex. Bus. & Com. Code § 17.46(b)(24). This section on which Plaintiff relies "requires [an] intentional omission of a material fact by [Defendant] for the purpose of duping [Plaintiff]." *Sidco Prod. M. Mktg., Inc. v. Gulf Oil Corp.*, 858 F.2d 1095, 1100 (5th Cir. 1988). "Mere nondisclosure of material information is not enough to establish an actionable DTPA claim." *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App.—Fort Worth 2005, no pet. h.). Thus, Defendant must have known of the material information at the time of the transaction and "must

-14-

have intended to deceive [Plaintiff]" by not disclosing the information.  *Id.*  Further, Plaintiff must demonstrate that she "would not have entered into the transaction had the information been disclosed."  *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App.—Fort Worth 2006).

Plaintiff's allegation for § 17.46(b)(24) meets none of these requirements.  Plaintiff alleges that Defendant's "intent" behind its failure to disclose the alleged material information was to dissuade her from taking measures necessary to protect her rights, not to dupe her into purchasing life insurance for her husband.  As such, construing Plaintiff's Complaint in her favor, even if Defendant had failed to disclose those alleged material facts, "[m]ere nondisclosure of material information is not enough to establish an actionable DTPA claim." *Patterson*, 191 S.W.3d at 827.  Moreover, even if such an intent was sufficient, Plaintiff has not alleged that she would not have entered into the transaction had the "information about 'E of I' and [the] calculation of pay deduction rates" had been disclosed to her.  If anything, Plaintiff's own allegations indicate that no transaction between Plaintiff and Defendant was ever successfully executed because The Standard—not Defendant—had denied Plaintiff's life insurance coverage for her husband for lack of Evidence of Insurability back in 2014.  Besides, Plaintiff's allegations appear to designate the City's Human Resources representative—not Defendant's—as the one who failed to disclose the alleged material information because he is the one who helped Plaintiff fill out the Enrollment Form 2018 to keep the "same" coverage amounts she believed she had since 2014.

And third, even when presuming that Plaintiff's allegations embrace those specific facts necessary to support her both of her DTPA claims discussed above, Plaintiff has not alleged that she relied to her detriment on any purported false, misleading, or deceptive act that Defendant made.  In fact, as discussed *supra*, even if the Court were to infer that her Complaint contains

allegations indicating that she relied to her detriment on such acts, most of Plaintiff's allegations appear to designate the City as the actual wrongdoer, and not Defendant.  Therefore, the Court dismisses Plaintiff's DTPA claims without prejudice.

### C.  Promissory Estoppel.

Lastly, Plaintiff alleges that Defendant is estopped from denying Plaintiff coverage because: (1) Defendant and its predecessor, The Standard, "implicitly promised the City that neither of them would engage in any of the deceptive acts or practices" for which Plaintiff sustained damages; (2) Plaintiff "reasonably and substantially relied on the good faith of her employer and its insuring underwriters by not engaging in the complicated self-education necessary to comply with requirements which were deliberately vague"; and (3) "[i]t was foreseeable to [Defendant] and the City that [Plaintiff] would rely on the implied promises", such that "[e]nforcement of the contract is necessary to avoid injustice."  Am. Compl. at 22–23. Defendant counters that Plaintiff's promissory estoppel claim must be dismissed because "there was no explicit promise made to Plaintiff on which she relied to her detriment."  Mot. at 14.  The Court agrees with Defendant.

"Although promissory estoppel is normally a counter-defensive theory, it is an available cause of action to a promisee who relied to his detriment on an otherwise unenforceable promise."  *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 655 (Tex. App.—Dallas 2015).  Promissory estoppel will not create a contract where none existed, but instead, it only serves to prevent "a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them."  *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972).  Hence, promissory estoppel presumes that no contract exists. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002).

Under Texas law, the elements of a promissory estoppel claim are: (1) a promise, (2) reliance thereon that was foreseeable to the promisor, and (3) substantial and reasonable reliance by the promisee to his detriment. *Universal Truckload, Inc. v. Dalton Logistics, Inc.*, 946 F.3d 689, 695 (5th Cir. 2020) (citations omitted).  The promise must be "sufficiently specific and definite such that it would be reasonable for the promisee to rely upon it as a commitment to future action." *Corpus Christi Day Cruise, LLC v. Christus Spohn Health System Corp.*, 398 S.W.3d 303, 311 (Tex. App.—Corpus Christi 2012).  The promise must also amount to more than "mere speculation concerning future events, a statement of hope, or an expression of opinion, expectation, or assumption." *Id.*

Here, even when drawing all inferences in her favor, Plaintiff fails to state a claim for promissory estoppel because she does not sufficiently allege evidence to satisfy the elements of her claim.  Construing her Complaint liberally, Plaintiff appears to allege two promises: one that The Standard and Defendant implicitly made to the City, and another that the City, The Standard, and Defendant made to her.

In regard to the first promise, Plaintiff alleges that The Standard—not a party to this case—and Defendant both "implicitly promised the City that neither of them would engage in any of the deceptive acts or practices" that Plaintiff alleged above.  Am. Compl. at 22.  While Plaintiff could arguably bring suit as an intended beneficiary of the employee benefit plan that the City purchased[3], as Defendant correctly points out, the purported implicit promise that the Defendant made is not "sufficiently specific and definite such that it would be reasonable for [Plaintiff] to rely upon it as a commitment to future action." *Corpus Christi Day Cruise*, 398

---

[3] Even though Plaintiff appears to intend to assert a claim against The Standard with her allegations, the Court does not address the contract between the City and The Standard because The Standard is not a party to this case.

S.W.3d at 311.  Further, Plaintiff does not sufficiently allege that her substantial and reasonable reliance upon this first promise was to her detriment.  Specifically, as discussed *supra*, Plaintiff's Texas Insurance Code and DTPA claims fail precisely because she does not allege any evidence that Defendant committed any of the deceptive acts or practices that she now adduces were to her detriment.  Hence, even when assuming that Plaintiff's allegations for this promise satisfy the first two elements of a promissory estoppel claim, Plaintiff still fails to allege that Defendant broke this purported implicit promise to her detriment.

As to the second promise, Plaintiff alleges that she "reasonably and substantially relied on the good faith of [the City,] . . . [The Standard, and Defendant] by not engaging in the complicated self-education necessary to comply with requirements which were deliberately vague."  Am. Compl. at 11.  Because Plaintiff's allegations throughout her Complaint attempt to assert an assortment of claims that she is either pursuing as an intended beneficiary of the employee benefit plan or as a "consumer" of the same, it is unclear exactly to which "requirements" Plaintiff is referring.

If she is referring to the "requirements" in the contract between Defendant and the City[4], then Plaintiff's claim fails because she does not satisfy any of the elements of her claim.  Plaintiff does not allege which specific requirements—or "promises"—on the contract were "deliberately vague", how Defendant could have foreseen Plaintiff's reliance on Defendant fulfilling those requirements in the contract, and how "by not engaging in the complicated self-education necessary to comply with th[ose] requirements" in the contract was to her detriment.

---

[4] As discussed in footnote 3, even though Plaintiff appears to intend to assert a claim against The Standard with her allegations, the Court does not address the contract between the City and The Standard because The Standard is not a party to this case.

But even if Plaintiff is referring to the "requirements" that she needed to satisfy to obtain life insurance coverage for her husband, her claim still fails because her allegations do not involve any promise that Defendant made to her.  Accepting all her allegations as true, Plaintiff appears to allege that the root of her promissory estoppel claim starts with the unsuccessful transaction between her and The Standard—not Defendant—back in 2014.  Am. Compl. ¶¶ 5–7, Exs. 1–2.  Indeed, Plaintiff appears to assert that she actually relied on *The Standard*'s promise that she would obtain life insurance coverage for her husband after filling out the 2014 Personal Enrollment Form, and that the "deliberately vague" requirement of Evidence of Insurability was in *The Standard*'s form, not Defendant's.  *Id.*  Thus, even while drawing all inferences in favor of Plaintiff, Plaintiff's promissory estoppel claim against Defendant fails because Defendant was not implicated at all in her allegations.  Therefore, the Court dismisses Plaintiff's promissory estoppel claim against Defendant without prejudice.

**D.  Leave to Amend.**

Defendant asks the Court to deny Plaintiff leave to amend her complaint for the second time because any further amendment would be futile.  Reply to Resp. in Opp'n at 9.  After due consideration, the Court denies Plaintiff leave to amend her complaint for the second time.

Rule 15(a) provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  "The language of this rule evinces a bias in favor of granting leave to amend."  *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (internal quotes and citation omitted).  In determining whether to grant leave to amend, a court should consider "substantial reasons" such as: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment.  *Id.*  Absent one of these "substantial reasons," "the discretion of the district court is not broad enough to permit denial."  *Mayeaux v. La. Health Serv. & Indem. Co.*, 376

F.3d 420, 425 (5th Cir. 2004) (internal quotes and citation omitted).  "Stated differently, district courts must entertain a presumption in favor of granting parties leave to amend."  *Id.*

In view of the record before it, the Court concludes that the circumstances indicate the existence of undue delay and Plaintiff's repeated failure to cure deficiencies with her pleadings. Plaintiff first retained counsel in October 2018.  Am. Compl. ¶ 19.   Then, on June 24, 2019, nearly ten months after retaining counsel, she filed her original state court petition against the City and Defendant, but solely alleging a breach of contract claim against the City.  Notice of Removal at 1.  After the City and Defendant timely removed on August 14, 2019, arguing that the City was improperly joined, *id.* at 1–4, a month later, Plaintiff filed a motion to remand that refuted Defendant's claim that the City was improperly joined.  Mot. to Remand at 1.  A week later, Plaintiff withdrew her motion to remand because she concluded that "the City was not . . . the putative insurer" after she had reviewed discovery that Defendant informally produced. Notice Withdrawing Mot. to Remand at 1–3.

Then, almost a month later, in their Joint Report of Rule 26(f) Conference, filed on October 15, 2019, the parties jointly represented that "it was necessary for Plaintiff to amend" her complaint and jointly suggested that Plaintiff would file her amended complaint by November 12, 2019.  Joint Report of Rule 26(f) Conference at 6.  Yet, Plaintiff would file her 151-page amended complaint nearly three months later on February 5, 2020, the last day for her to do so under the Scheduling Order.  *See* Scheduling Order, ECF No. 6 (noting that the parties' deadline to file all motions to amend or supplement their pleadings or to join additional parties with the Court was February 5, 2020).

After Defendant timely filed the instant Motion on February 19, 2020, a week later, Plaintiff filed an opposed motion to extend her deadline to respond to Defendant's Motion,

requesting a 32-day extension to respond so that she could receive some "essential" discovery to overcome Defendant's Motion.  ECF No. 11.  After hearing the parties' arguments at docket call, the Court granted Plaintiff's motion and extended Plaintiff's March 4, 2020 deadline to April 6, 2020.  ECF Nos. 13 & 14.

On April 1, 2020, Plaintiff filed two additional motions: one to extend her deadline to respond to Defendant's Motion, and another asking the Court to schedule a pretrial conference to address discovery disputes between the parties.  ECF Nos. 15 & 16.  On April 14, 2020, the Court denied Plaintiff's motion requesting a pretrial conference in view of the novel coronavirus/COVID-19 pandemic, and ruled on the parties' discovery disputes.  ECF No. 19.  In that same order, the Court also extended Plaintiff's deadline to respond to Defendant's Motion to April 21, 2020—affording Plaintiff another fifteen days to respond after the April 6, 2020 deadline.  *Id.*

The Court finds undue delay because, in total, Plaintiff has had almost nineteen months since she retained counsel to plead a plausible claim for relief against Defendant, and ten months since the filing of her original state court petition to cure the deficiencies in her pleadings.  Further, Plaintiff did not file her 151-page amended complaint until the day the parties' deadline to file all motions to amend or supplement their pleadings expired under the Scheduling Order.  If the Court were to grant leave to amend, it would be affording Plaintiff more than three months after the already expired deadline to present new claims against Defendant.  Moreover, the Court would also have to amend the remaining Scheduling Order deadlines to fairly entertain Plaintiff's new claims given the exigent circumstances presented by the ongoing novel coronavirus/COVID-19 pandemic.  Therefore, the Court is of the view that giving Plaintiff over twenty months to address any shortcomings in her claims against Defendant would encompass

undue delay.  *United States ex rel Gage v. Rolls-Royce N.A., Inc.*, 760 F. App'x. 314, 318 (5th Cir. 2019).

The Court also finds that Plaintiff has repeatedly failed to cure the deficiencies in her pleadings against Defendant.  In her original state court petition, while Plaintiff included Defendant as a party, she only alleged a breach of contract claim against the City, not against Defendant.  Considering that informal disclosure of information and formal discovery between the parties began at least since September 4, 2019, Notice Withdrawing Mot. to Remand at 1, Plaintiff has had nearly six months to review such information and present a viable claim against Defendant before the deadline to amend her complaint expired.  Yet, despite Plaintiff voluntarily deciding to eliminate the City as a defendant and having extensive information and discovery, as discussed *supra*, most of Plaintiff's allegations still appeared to designate the City as the wrongdoer in this case, not Defendant.  Even Plaintiff herself has already agreed in principle with Defendant that The Standard is a possible defendant in her case.  ECF No. 16 at 3.  Hence, Plaintiff has already had multiple opportunities and resources to present a viable claim against Defendant, who has been an adverse party to this case for almost ten months, none of which have been successful.  Instead, Plaintiff has been equivocally presenting allegations of wrongdoing against Defendant that actually seem to designate The City and The Standard as the true perpetrators.

As such, the Court finds that undue delay and Plaintiff's repeated failure to cure the deficiencies in her pleadings against Defendant, when viewed together, would prejudice Defendant if the Court were to grant Plaintiff leave to amend.

### IV.   CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant Dearborn National Life Insurance Company's "Motion to Dismiss" (ECF No. 10) is **GRANTED.**

**IT IS FURTHER ORDERED** that all of Plaintiff Vanessa St. Pierre's claims against Defendant Dearborn National Life Insurance Company are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FINALLY ORDERED** that the Clerk of the Court shall **CLOSE** this matter after docketing the Final Judgment to be issued separately on this day.

**So ORDERED and SIGNED this 28th day of May 2020.**

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**